GONZALES, Judge.
Defendants, Brian Keith Rack and Ronald Joseph Depass, were charged by separate bills of information with possession of cocaine, violations of La.R.S. 40:967(C); both charges arose out of a single incident which occurred on November 26, 1989. Each defendant filed a motion to suppress evidence. The district court conducted a single suppression hearing on the motions; at the conclusion of the hearing the court denied the motions. Each defendant then withdrew his plea of not guilty, pled guilty as charged and reserved his right to appellate review of his motion to suppress. See State v. Crosby, 338 So.2d 584 (La.1976). Defendants were each sentenced to imprisonment at hard labor for a term of three years; however, the district court suspended both sentences and placed defendants on supervised probation for three years, subject to various conditions. Defendants now appeal. Rack appeals in KA 90 1096 and Depass in KA 90 1097, which appeals were consolidated by order of this Court. Each defendant urges in a single assignment of error that the district court[1] erroneously denied his motion to suppress.
*1217 The state presented the testimony of Franklin City Police Officers Clarence Matthews and Richard Rivere at the suppression hearing. Neither defendant introduced any evidence at the hearing. A summary of the testimony given by the state’s witnesses follows.
At about 1:00 or 1:30 a.m. Matthews was alone in his police unit on patrol in the Lee Street area of Franklin where Franklin Cigar and Tobacco is located. Matthews testified that the area was a “high crime area” based on four burglaries of the Franklin Cigar and Tobacco building over the course of two years. While patrolling with his headlights turned off Matthews stopped at the stop sign at the intersection of Davis and Lee Streets. He remained there long enough to observe a car that was parked in a graveled area parallel to Lee Street on property in front of a warehouse of Franklin Cigar and Tobacco. At that time, from a distance of approximately thirty feet away, he also observed that there were two subjects inside the car. There was no street curb between the street and the area where the car was parked. The car was a maximum of four or five feet from the warehouse in a well-lit area no more than four or five feet from Lee Street. The graveled area was neither fenced nor posted with a no trespassing or no parking sign and had no other type of sign prohibiting parking after 5:00 p.m.[2] As Matthews’ police unit turned onto Lee Street and approached the parked car at a speed of about three or four miles per hour, the car’s two occupants “jumped up,” “acting somewhat nervous[ly].”
Upon reaching the location of the parked vehicle, Matthews exited his unit and asked the two subjects in the parked vehicle to step out of the car. The subject seated on the driver’s seat was Rack, and Depass was seated on the passenger seat. Matthews asked Rack for his driver’s license. Rack produced a California driver’s license and at that time Matthews noticed Rack had a “sort of like a white speck” on his mustache. Matthews did not ask Rack what the speck was or reach out and touch it; however, Matthews suspected it was rock cocaine. The other subject, Depass, got out of the parked vehicle. He was the more talkative of the two, acting “real nervous.” Matthews asked Depass to step to the rear of the vehicle and put his hands on the car. Matthews then went to the rear of the parked vehicle and checked its license plate, which was a current Mississippi license plate. Matthews radioed police headquarters to obtain a computer check of the license plate, but police headquarters was unable to get information on its computer at that time.
Matthews then spoke to defendants, asking them what was their purpose in parking where they were; he testified they could not give him a “clear answer.” Matthews asked defendants where they lived. Rack answered that he was from California. Depass told Matthews he lived four houses from where he and Rack were parked and that he and Rack were brothers. Again, Matthews asked defendants why they were parked where they were, and still they could not give Matthews what he considered a “clear answer.” Consequently, Matthews arrested defendants for criminal trespass, in violation of La.R.S. *1218 14:63.[3]
Matthews testified that after arresting the defendants he placed Depass in his police unit because Depass was “acting up” more than Rack. Matthews had called earlier for back-up; he kept Rack outside his police unit until Officer Rivere arrived to assist him. When Rivere arrived the officers placed Rack in Rivere’s police unit. Matthews testified that when Rivere arrived a decision was made to have a tow truck pick up the parked vehicle, rather than leaving it where it was parked or letting Depass contact someone who could come and get his car, although Depass lived only four houses away. According to Rivere, the decision to impound the vehicle was made by Matthews; and the decision was made before the officers conducted an inventory search of the vehicle in the field.
Officer Matthews’s testimony reflected that the cocaine was found in the car during the course of the inventory search. He stated, “I logged down the items as Officer Rivere called them off inside the vehicle.” Matthews testified that he did not look into the car as the search was conducted, and thus he did not see where the matchbook containing the cocaine came from. Officer Rivere’s testimony indicates that the cocaine was seized after an inventory search was begun; however, he attempts to characterize the discovery of the cocaine as a “plain view” finding. The vehicle impoundment form, which Matthews said he filled out as Rivere called out the items one by one in the course of the inventory search, lists the cocaine as the fourth item found in the vehicle following a knife, some cassettes and some papers. The space on the vehicle impoundment form in which the reason for impoundment is to be indicated (listing accident, DUI, stolen, abandoned, felonious use, no operator’s license, burned or other) was left blank.
The officers waited until they had taken defendants to police headquarters before formally arresting defendants for possession of cocaine. After defendants were advised of their Miranda rights, Depass made a statement to the police that the cocaine was not Rack’s but his, and he did not want his brother to be in trouble. Rack made no statement to the officers.
The arguments of the defendants on appeal are identical in support of the single assignment of error each of them filed. Defendants argue that, based on the totality of the circumstances, there was no probable cause for Matthews to believe they committed criminal trespass; therefore, their arrests were unjustified and unlawful. They contend that the seizure of the rock cocaine from the vehicle in which they had been occupants was unlawful because it occurred during an unlawful search. To support the contention, defendants argue that there was neither probable cause nor consent to search the vehicle and that the alleged illegal search was not a true inventory search or a search incident to a lawful arrest.[4]
The right of law enforcement officers to stop and interrogate one reasonably *1219 suspected of criminal conduct is recognized by Louisiana Code of Criminal Procedure article 215.1, as well as both federal and state jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Pautard, 485 So.2d 909, 911 (La.1986). Reasonable suspicion for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual’s right to be free from governmental interference. State v. Payne, 489 So.2d 1289, 1291 (La. App. 1st Cir.), writ denied, 493 So.2d 1217 (La.1986). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable suspicion to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Bracken, 506 So.2d 807, 811 (La. App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987). The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Payne, 489 So.2d at 1291-1292.
Under these particular facts and circumstances, we find Matthews was justified in effecting an investigatory stop of defendants through which he could question them in order to either confirm or dispel his suspicions of criminal conduct.
We now focus our attention on whether or not any additional facts and circumstances coming within Matthews’s knowledge following the investigatory stop elevated reasonable suspicion to the level of probable cause for defendants’ arrests. There was no additional evidence of trespass, the crime for which defendants were arrested, which was adduced from the investigatory stop, other than Matthews’s opinion that the defendants’ answer to his question as to their reason for being there was “unclear.” His testimony does not reveal what this “unclear” answer was. It is not unusual, however, for a private citizen driving through his own neighborhood to pull his car a few feet off the road only four doors from his house, perhaps to adjust his seat or to read a map. The fact that Depass lived on that street gave the two men a legitimate reason for being in the area. Matthews testified that the graveled area was available to anyone who drove a few feet off Lee Street and decided to park on the area. The parking area was neither fenced nor posted with any sign prohibiting parking after business hours or trespassing. Officer Rivere’s testimony reflected that the width of Lee Street was sufficient for two cars to pass each other but, if someone driving a car on Lee Street wanted to park his car, it would probably be safer for that individual to drive his vehicle off Lee Street onto the graveled area. The car was parked no more than four or five feet off of Lee Street, and no evidence was introduced to show where the public property ended and the private property began. Neither the trial court nor this court can supply such information. There was no testimony that either defendant knew he was trespassing or that Matthews even informed defendants prior to their arrests that by parking where they were they were trespassing.
This Court is particularly concerned about the position of the guest passenger, Depass, in relation to any duty he may have had to prevent the alleged crime of trespass. In a civil setting, the Louisiana Supreme Court has said in the case of Adams v. Security Insurance Company of Hartford, 543 So.2d 480 (La.1989), that a passenger has no duty to intervene or interfere with the conduct of a negligent driver, even when that driver is speeding. If a guest passenger has no duty to interfere with the conduct of a driver when even his own life may be at risk, why then should the guest passenger have a duty to intervene in a potential misdemeanor violation by the host driver, where that driver might pull onto property which has no lines of demarcation which could result in a trespass violation.
The testimony of Officer Matthews that he recognized a “white speck” in Rack’s mustache as crack cocaine, and the fact *1220 that the car had Mississippi license plates while Rack had a California driver’s license, (the only additional facts adduced from the investigatory stop) did not produce any additional evidence of a trespass violation. The trespass arrest was clearly a pretext used to give the arresting officer an opportunity for an inventory search for evidence to satisfy his suspicion that the defendants had drugs in their possession. On direct examination, Officer Matthews was asked “[Y]ou couldn’t determine any law-breaking in your presence, could you?” He answered, “Once I approached the vehicle, what I suspected they were doing, no.”
Louisiana Code of Criminal Procedure article 211.1 provides:
When a peace officer has reasonable grounds to believe a person has committed criminal trespass as defined by Section 63 of Title 14 of the Louisiana Revised Statutes of 1950, he shall give a written summons instead of making an arrest if:
(1) He has reasonable grounds to believe that the person will appear upon summons, and
(2) He has no reasonable grounds to believe that the person will cause injury to himself or another or damage to property unless immediately arrested.
In any case in which a summons has been issued, a warrant of arrest may later be issued in its place. (Emphasis added)
Louisiana Code of Criminal Procedure article 5 provides:
The word “shall” is mandatory, and the word “may” is permissive.
We have found no cases, and the prosecution has cited no cases, wherein a trespass arrest under circumstances such as these has been upheld. The arresting officer admitted on cross-examination that his normal practice in such a situation would have been to simply tell the defendants to get off the property. Under these facts and circumstances, Matthews did not have probable cause to arrest defendants for criminal trespass in violation of La. R.S. 14:63(B) (as amended by Act 78 of 1981), which occurs when a person intentionally enters immovable property owned by another, knowing his entry is unauthorized or under circumstances where he reasonably should know his entry is unauthorized (emphasis added). There was no evidence of an intentional entry, hence, defendants’ arrests were illegal. Cf. State v. Arceneaux, 425 So.2d 740, 743 (La.1983).
We now consider the circumstances of the search and the manner in which it was conducted. The prosecution characterizes the discovery of the cocaine as a plain view search which occurred prior to the inventory search. However, Officer Matthews testified that the search was an inventory search, and that he wrote down the items which were found as Officer Rivere called them out to him in the course of the search. He was asked “Was anything discovered during the inventory?” He answered “A match box containing six rocks.” He was asked “What part did you play in the inventory?” He answered “I wrote down the items as they were called off by the other officer.” He was asked “And the cocaine inside the car was found during the course of the inventory?” He answered “Yes, sir.” He was asked “What happened once you found the cocaine?” He answered “We continued the inventory and the vehicle was taken by the wrecker service.”
Officer Rivere was also questioned about the circumstances surrounding the search.
Q. During the course of the investigation at the scene, did there come a time when you inventoried the contents of an automobile?
A. Yes, sir.
Q. How did that take place?
A. Officer Matthew arrested the two subjects and asked me to transport one to headquarters; and after placing Mr. Rack in the rear of my patrol car, we conducted — started to conduct an inventory of the vehicle, which was a 1980 Ford bearing Mississippi tags; and I walked over to the vehicle to assist Mm with the inventory.
Q. During the course of inventory, did you discover any evidence?
*1221 A. Yes, sir, I did.
Q. What did you find?
A. I saw on the driver’s floorboard from outside the vehicle with the assistance of a flashlight — I saw a half a match box with what appeared to be rock cocaine in it.
Q. Did you seize that evidence?
A. Yes, I did.
It is clear to this Court that the cocaine was found after the inventory search had begun. The evidence was not discovered by plain view. The defendants had been arrested, handcuffed and placed in separate patrol cars, a tow truck had been called and a decision to inventory the contents of the car had already been made when the cocaine was found. It appears from the record that Officer Rivere attempted to later characterize the finding of the cocaine as a plain view discovery in order to legitimize the evidence.
An essential requirement to a valid inventory search is that the police must have acted in good faith in conducting the inventory, and must not have used the inventory procedure as a subterfuge for a warrantless search. It has therefore been held that where the conduct of the police was inconsistent with its contention that the search was conducted for inventory purposes, the search is unlawful. Another essential prerequisite to a valid inventory search is that the police must have taken lawful custody of the vehicle in the first instance. It has therefore been held that where the circumstances show that the police had no authority to impound the vehicle, or that police custodial care of the vehicle was not necessary, the inventory search was unlawful. State v. Jewell, 338 So.2d 633 (La.1976). A valid inventory search is conducted to inventory the vehicle’s contents in order to safeguard them, as an incident to the vehicle’s necessarily being taken into lawful police custody. The justification for the inventory search of a vehicle is to protect' the occupant of the vehicle against loss of his property or the law enforcement agency against the occupant’s claim for the failure to guard against such loss. State v. Killcrease, 379 So.2d 737 (La.1980).
Officer Matthews testified that it was the police department’s policy to impound all vehicles involved in criminal trespass and that he had never allowed someone else to come pick up a vehicle and drive it home for the owner. A normal practice of impounding every vehicle involved in a trespass violates the statutory mandate that a peace officer shall issue a summons rather than making an arrest for a trespass violation. This inventory search was clearly a subterfuge, used by the officers to search the car for evidence of illegal activity, the only evidence of which existed was Officer Matthews’s assertion that when he talked to the defendants he recognized a single white speck in Rack’s mustache as rock cocaine. The vehicle was under the control of the police officers, and they had plenty of time to obtain a search warrant if they had probable cause to search the vehicle.
The search fails under two different tests. First, there was no probable cause for the arrest; therefore, any search incident to the unlawful arrest was unconstitutional. Second, the inventory search standing alone was illegal because there was neither probable cause nor consent to search the vehicle by means of an inventory search. The physical evidence (cocaine) seized from the car in which defendants had been seated was unconstitutionally obtained and should have been suppressed by the district court. See State v. Raheem, 464 So.2d 293, 297 (La.1985). Moreover, although Depass does not argue on appeal that his statement to the police following his arrest should have been suppressed, (assuming arguendo that Depass had made such an argument) we find that this statement obtained as a direct result of an arrest without probable cause should also have been suppressed. See State v. Arceneaux, 425 So.2d at 743-744; State v. Leatherwood, 411 So.2d 29, 32 (La.1982).
Therefore, defendants’ convictions and sentences are reversed; and their motions to suppress are granted. The cases are remanded to the district court to allow de *1222 fendants to withdraw their guilty pleas and for further proceedings in accordance with law.
CONVICTIONS AND SENTENCES REVERSED; CASE REMANDED.
LANIER, J., dissents.

. We note that the motions to suppress were heard and denied by District Court Judge Robert M. Fleming; District Court Judge Anne Len- *1217 nan Simon accepted the guilty pleas and sentenced defendants.

. We note that (in brief) defendants assert that Matthews testified that "if someone stepped onto the property there was no way the person would know that he was trespassing;” and, apparently as the source of this testimony, defendants refer to page 15, lines 1-7 of the transcript of the suppression hearing. However, an examination of the entire transcript of the suppression hearing reveals that Matthews did not give the testimony defendants attribute to him which is quoted above. Instead, the page and lines of the transcript cited by defendants reflect the following testimony (which was elicited from Matthews by Depass’ counsel on cross-examination):
[by Matthews] ... I said that there’s no signs that state that you cannot trespass on this property.
Q Is there something which indicates that if you step on that property at a certain time of day or night or drive on it, you in fact are trespassing?
A To my knowledge, no.

. LSA-R.S. 14:63(B) as amended by Act 78 of 1981, the law in effect at the time of defendants’ arrest, provided as follows:
B. No person shall intentionally enter immovable property owned by another:
(1) when he knows his entry is unauthorized; or
(2) under circumstances where he reasonably should know his entry is unauthorized. While inapplicable to defendants’ arrests for
criminal trespass, Act 870 of 1990 (which took effect on January 1, 1991) added additional elements to the crime of criminal trespass on immovable property as defined in La.R.S. 14:63. Those additional elements are that the property be posted and that the entry to the property be without first obtaining the consent of the owner or lessee of the property.

. Rack’s formal assignment of error asserts that the district court erroneously refused to suppress the physical evidence (the cocaine); on the other hand, Depass’ formal assignment of error encompasses that same assertion and, additionally, asserts that the district court erroneously refused to suppress Depass’ statement to the police. However, other than a fleeting reference in brief to the district court's having heard Depass’ motion to suppress the physical evidence and Depass’ statement, Depass makes no argument addressing the district court’s alleged erroneous refusal to suppress his statement. As noted above, defendants’ arguments are identical and relate only to the alleged erroneous refusal of the district court to suppress physical evidence.