**Shane Lee FOSTER, Plaintiff-Appellant**

v.

**Ivy WOODS, in his individual & official capacities, Defendant-Appellee**

**No. 16-30756**

United States Court of Appeals, Fifth Circuit.

Filed April 20, 2017

Richard Joseph Petre, Jr., Onebane Law Firm, Lafayette, LA, for Plaintiff-Appellant

Craig Edmond Frosch, Esq., Lloyd Frederick Schroeder, II, Usry, Weeks & Matthews, A.P.L.C., New Orleans, LA, for Defendant-Appellee

Before SMITH, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM: *

The plaintiff, a private investigator, followed a vehicle into a high school parking lot, stopped for several minutes, then soon drove away after becoming aware he had been detected. A few minutes later, he stopped on a private road. He was subsequently arrested by the defendant sheriff at the sheriff's office. The charges brought against him were later dropped. The issue on appeal is whether there was probable cause to arrest him. He brought this Section 1983 action based on the arrest. The district court granted summary judgment for the sheriff on the basis of qualified immunity, and the plaintiff appealed. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Shane Lee Foster is a licensed private investigator. His assignment on the day he was arrested was to gather information on a personal-injury claimant who lived in Jennings, Louisiana. Foster had his handgun with him, stowed in the center console of his vehicle. Foster is a Louisiana State Police certified handgun instructor; he carried his concealed-handgun permit with him.

On May 15, 2015, Foster drove to the surveillance-target's residence. Upon arriving, Foster drove back and forth in front of the residence looking for a place from which to watch the house. He saw a vehicle pull out of the driveway and decided to follow in order to determine whether his target was driving the vehicle. He would later learn that the driver was his target's teenaged son on his way to school. Foster maneuvered behind the vehicle, followed it into the school parking lot, and stopped several rows behind it in order to observe the driver exit the vehicle.

The parking lot was for students only. According to Foster, the lot was not enclosed. Foster states he "did not notice a sign that the parking lot was a student parking area," nor did he notice the other signs around the lot. The lot was posted with a sign indicating the school was a drug-free and firearm-free zone. Another sign, with its constant capitalization removed for ease of reading here, said this: "No trespassing[.] Unauthorized persons found on school property from dusk to dawn will be prosecuted." After following the teenager's vehicle into the lot, Foster waited in the parking lot for several minutes without leaving his vehicle or removing his firearm from the console.

The boy noticed he was being followed as he drove to school. After parking, he decided to remain in his vehicle. He called over a fellow student, who was the son of Sheriff Ivy Woods, and told him about being followed. The boys called Woods, who told them to stay in the vehicle and he would try to return to the school. Realizing he had been detected, Foster decided to

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

leave. On his way out, he drove in front of the vehicle and determined that the driver was not the target of his surveillance.

After leaving the school, Foster drove back to the surveillance target's residence and turned onto a road across the highway from the house. He claimed he intended to stop so he could look at a map of his location using his cell phone and establish a position for surveillance. The road was in a rural area, was not gated, and had no signs. The nearest house, according to Foster, was about 100 yards away. The road, however, was a private road. Foster claims he drove just over 100 feet down the road, turned around, and was there for "about a minute" before Woods arrived and activated his vehicle's flashing blue lights.

Woods ordered Foster to exit the vehicle and put his hands on the hood. Foster identified himself as a private investigator. Foster claims that after Woods patted him down, Woods said, "You don't follow kids to school. My kid goes to that school." Woods noticed Foster's concealed handgun permit, and Foster informed Woods he had a firearm in the console of his vehicle. By that time, Deputy Derrick Miller had arrived. The officers informed Foster that Foster violated the firearm-free school zone law when he entered the school parking lot with a handgun. Foster pointed out an exception to the law for firearms contained entirely within a vehicle. After some discussion, Foster gave his cell-phone number to Deputy Miller and was allowed to leave. Foster understandably decided to end his surveillance. While driving home, though, he received a phone call from Deputy Miller asking him to come to the Sheriff's office for questioning.

At the office, Foster met with Woods and other officers. He was informed that he would be charged with a violation of a statute that defines "firearm-free zone" as "an area inclusive of any school campus and within one thousand feet of any such school campus, and within a school bus." La. Rev. Stat. § 14:95.6(A) (1993). The only part of that statute helpful to Woods is the definition we just quoted. The only criminal conduct identified in Section 14.95.6 is "to cover, remove, deface, alter, or destroy" any sign identifying a firearm-free zone. Id. § 14:95.6(F)(1). Foster did not tamper with any sign. Foster relies on another provision in that same statute declaring the statute to be inapplicable to "[a]ny constitutionally protected activity within the firearm-free zone, such as a firearm contained entirely within a motor vehicle." Id. § 14:95.6(B)(5). Nonetheless, Foster was charged with violating Section 14:95.6, booked, and released.

Foster suggests Woods was motivated more by pursuing a personal quarrel than by law-enforcement objectives. In his deposition, Foster stated that before beginning his surveillance assignment, he was told that the target of the surveillance was a long-time friend and political supporter of Woods and that the person's wife worked in the Sheriff's office. He was also told that the surveillance target had been arrested at one point but immediately released due to his relationship with Woods. Foster further claims that, during the discussion in the Sheriff's office, Woods stated Foster was "going to be in the paper tomorrow" and that school authorities wanted "to make an example" out of him. Immediately after Foster was released, the Sheriff's office issued a press release announcing Foster's arrest. Two days later, a local newspaper ran a front-page story titled "PI busted with pistol after following student." The article featured Foster's mug shot and indicated he was "charged with carrying a firearm or dangerous weapon by a student or non-stu-

dent on school property, at school-sponsored functions, or in a firearm-free zone."

In June 2015, the district attorney dropped the charges against Foster. On July 24, 2015, Foster filed suit against Woods and Commander Christopher Ivey for violating his rights under the Fourth and Fourteenth Amendments. Foster sued Woods in his personal and official capacities. Foster alleged liability under 42 U.S.C. § 1983 for arresting him without probable cause and for supervisory liability. He also alleged liability under Louisiana state law for false or wrongful arrest, negligent or intentional tortious conduct for failing to supervise deputies, and liability under the principle of respondeat superior for the actions of the deputies. In a second amended complaint, he added a defamation claim.

After discovery, the parties filed cross-motions for summary judgment. On June 7, 2016, the district court granted the defendants' motion and dismissed all claims. The court determined that Woods was entitled to qualified immunity on the Section 1983 claims because he had probable cause to arrest under a statute that provides the "[i]llegal carrying of weapons" is the "intentional possession or use by any person of a dangerous weapon on a school campus during regular school hours or on a school bus." LA. REV. STAT. § 14:95(A)(5)(a) (2014). The district court determined that Foster failed to make the required showing for his defamation claim, and the remaining state-law claims failed because Woods had probable cause to arrest. Foster's timely appeal seeks reversal only as to his claims against Sheriff Woods, not his claims against Commander Ivey.

## DISCUSSION

We review a district court's grant of summary judgment de novo. Crostley v. Lamar Cnty., 717 F.3d 410, 422 (5th Cir.

2013). On appeal, all inferences arising from the evidence are made in a manner favorable to the opponent of the motion. Evans v. City of Marlin, 986 F.2d 104, 107 (5th Cir. 1993). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

In dismissing the claims against the defendants in their individual capacities, the district court determined that they were entitled to qualified immunity. That doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). A plaintiff overcomes the immunity if he can show: "(1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." Waltman v. Payne, 535 F.3d 342, 346 (5th Cir. 2008). The court may exercise its discretion in deciding which of those two requirements to address first. See Pearson, 555 U.S. at 236, 129 S.Ct. 808. Foster, as the plaintiff, bears the burden of demonstrating the inapplicability of the qualified-immunity defense. See Crostley, 717 F.3d at 422.

Foster claims his constitutional rights were violated by his arrest without probable cause. "The right to be free from arrest without probable cause is a clearly established constitutional right." Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994). "[T]he test for whether the 'police officer had probable cause to arrest is if, at

the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime.'" *Id.* (alterations omitted) (quoting *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992)).

We do not limit our review to the basis alleged when the arrest occurred. The subjective reason the officer had to justify the arrest at the time is not the issue; probable cause for the arrest will exist "if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153–54, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)). We also do not weigh the possible unfortunate personal motives of Woods, as our only question is whether objectively there were sufficient grounds for the arrest. *See Sorenson v. Ferrie*, 134 F.3d 325, 328 n.5 (5th Cir. 1998).

It is not argued that the grounds stated at the time of the arrest, a statute providing a definition of a gun-free zone and criminalizing the defacing of related signs, supports the arrest. *See* LA. REV. STAT. § 14:95.6 (1993). Instead, Woods's principal argument is that he had probable cause to arrest under a statute that prohibits the "intentional possession or use by any person of a dangerous weapon on a school campus during regular school hours or on a school bus." *Id.* § 14:95(A)(5)(a) (2014). Woods also argues, as he did in the district court, that he had probable cause to arrest under two additional Louisiana statutes, one of which is Louisiana's criminal trespass statute. *See id.* § 14:63 (2012). The district court did not discuss probable cause under these additional statutes.

"We may affirm a grant of summary judgment on grounds other than those offered by the district court." *Izen v. Catalina*, 398 F.3d 363, 366 (5th Cir. 2005). We conclude there was a basis to arrest for trespass, so we do not consider the propriety of the arrest under the gun-free-zone statutes. We also review Foster's remaining state-law claims.

*I. Probable Cause to Arrest for Trespass*

Sheriff Woods argues that he had probable cause to arrest for trespass because Foster entered and remained in a student-only parking lot. The district court did not analyze the trespass question, but it observed in a footnote that it is "likely that [Woods] had probable cause to arrest Foster for trespassing when he entered the high school parking lot." The trespass statute simply involves entry without authorization:

B. No person shall enter upon immovable property owned by another without express, legal, or implied authorization.

C. No person shall remain in or upon property, movable or immovable, owned by another without express, legal, or implied authorization.

LA. REV. STAT. § 14:63 (2012). Foster denies this statute reaches him, saying that as a matter of "[c]ustom and circumstance" he had implied authorization to enter the parking lot. In one case on which he relies, a Louisiana court stated that "[t]he mere fact that the defendant was walking through the housing development [did] not constitute trespassing." *State v. Mulder*, 76 So.3d 1241, 1245 (La. Ct. App. 2011). In another, a Louisiana court held that officers did not have probable cause under a previous version of Section 14:63 where the suspects pulled a few feet off the road into a gravel area, the area was close to the home of one of the suspects, and there

was no evidence the suspects intentionally entered the property knowing their entry was unauthorized. *See State v. Rack*, 585 So.2d 1215, 1219–20 (La. Ct. App. 1991). There are other cases suggesting a different result.

One example not discussed by Foster is a case in which the defendant argued there was no evidence to show he was trespassing in a park because he was parked on a public street. *State v. Woods*, 982 So.2d 157, 161 (La. Ct. App. 2008). The court determined the officer had probable cause to arrest for trespassing because the defendant parked "almost to the end of the parking spots in [the park] after dark without authority when there were signs posted indicating that the park was closed." *Id.* at 163. In another case, the court upheld a trespass conviction of a high-school student for trespassing on school grounds. *See State ex rel. C.J.*, 63 So.3d 1133, 1138–39 (La. Ct. App. 2011). The court determined the arresting officer in that case had probable cause to arrest for trespassing "upon hearing [the school administration manager] inform [the student] that he was not allowed on the property." *Id.* at 1138. In yet another case, the Louisiana Supreme Court determined officers had probable cause to arrest for trespassing in a housing development containing several "no trespassing" signs after the suspect produced identification that established he did not live in the development. *See State v. Lampton*, 110 So.3d 557, 562 (La. 2013).

Relevant here, Woods knew that Foster was not a student, that he followed a student's vehicle into a student parking lot posted with a "no trespassing" sign, and that Foster remained in the lot for some time as students were arriving for school.

It is true that one of the signs stated that those who are on the property from dusk to dawn, *i.e.*, during nighttime hours, would be prosecuted. That limitation is not part of the trespass statute, and Foster denies even reading that sign.[1]

Given the facts known to Woods, he had knowledge that would warrant a reasonable officer to believe that Foster violated the trespass statute.

## II. Remaining Claims

Foster asserted a defamation claim against Woods in a second amended complaint. The district court dismissed the claim. Foster did not discuss the defamation claim in his appellate brief, so he waived that claim. *See Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 175 n.1 (5th Cir. 2016). Foster did not discuss his municipal liability claim in his initial appellate brief, so he has also waived that claim. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

Woods suggests that Foster waived his remaining state-law claims for failure to brief them. Although Foster does not discuss his state-law claims in his initial appellate brief, he argues that he preserved them because those claims depend on whether probable cause existed and he discussed that issue on appeal. Even so, Foster explains that "[i]f the Sheriff had probable cause, then Mr. Foster has no claims." We conclude that Foster has failed to show that there was no probable cause to arrest him. Foster's remaining claims therefore fail.

AFFIRMED.

---

1. Foster emphasizes that Woods had "no clue" what the parking lot "no trespassing" sign said. Nevertheless, he concedes that

"Woods knew that the school had a no-trespass sign[.]"