Robert WINBURN, Plaintiff,

v.

Cheryl BOLOGNA, et al., Defendants.

No. 2:95–CV–0044.

United States District Court,
W.D. Michigan,
Northern Division.

June 12, 1997.

Robert Winburn, Ionia, MI, pro se.

Christine M. Campbell, Frank J. Kelley, Atty. Gen., Corrections Div., Lansing, MI, for Defendants.

## OPINION AND ORDER APPROVING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

QUIST, District Judge.

This is a *pro se* prisoner's civil rights action brought under 42 U.S.C. § 1983. Plaintiff alleges violations of the Religious Freedom Restoration Act (RFRA), First Amendment, and Fourteenth Amendment. At the time of the events in question, Plaintiff was an inmate at the Chippewa Correctional Facility (CCF) in Kincheloe, Michigan. Plaintiff seeks monetary damages and injunctive relief. Defendants moved for summary judgment. In a Report and Recommendation, United States Magistrate Judge Joseph G. Scoville recommended that Defendants' motion be granted, and that the claims for injunctive relief be dismissed as moot. The Report and Recommendation also noted that the Plaintiff's complaint misspelled Defendant Belonga's name as Bologna. Now before the Court are Plaintiff's objections. The Court has reviewed the Report and Recommendation filed by the United States Magistrate Judge in this action on March 27, 1997. In accordance with 28 U.S.C. § 636(b)(1), the court has made *de novo* consideration of those portions of the Report and Recommendation to which objection was made.

### Facts

The facts in this case are not in dispute. On December 9, 1994 and December 14, 1994, Plaintiff received packages containing books or pamphlets. Defendant Belonga reviewed these materials and found them to be racist literature violative of MDOC policy directives. On both occasions, Plaintiff received a rejection notice prepared by Defendant Belonga. Plaintiff requested a hearing regarding the rejection of these materials. On December 16, 1994, Defendant Sabin conducted an administrative hearing. He determined that the materials were prohibited under policy directive 05.03.118. Paragraph N(4) of policy directive 05.03.118 provides that "materials advocating racial supremacy or ethnic purity or attacking a racial or ethnic group are prohibited because such materials are considered to be a threat to the order and security of an institution or to the rehabilitation of prisoners." Plaintiff was advised that he had the option of mailing the materials out of CCF at his expense, sending them from the facility with a visitor, or destroying the materials. Normal procedure after the hearing would have been to forward copies of the rejected materials to the Deputy Director of Correctional Facilities for review and possible addition to the MDOC's restricted publications list. However, the envelopes and the materials at issue are now lost. Defendant Belonga claims the materials were either accidentally sent to Plaintiff inside the facility or were mailed to his home. The Court is somewhat confused by Plaintiff's complaint because Plaintiff has filed with the Court copies of the very materials he claims should not have been rejected.

### Discussion

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Id.* at 251, 106 S.Ct. at 2511 (citing *Schuylkill and Dauphin Improvement Co. v. Munson,* 14 Wall. 442, 448, 20 L.Ed. 867 (1871)). The summary judgment standard mirrors the standard for a directed verdict. *Id.* at 250, 106 S.Ct. at 2511. The only difference between the two is procedural. *Id.* Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. *Id.*

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi,* 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

■ Dismissals of complaints filed under civil rights statutes are scrutinized with special care. *Brooks v. Seiter,* 779 F.2d 1177, 1180 (6th Cir.1985). Also, *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Liberally construing the complaint filed by Plaintiff and Plaintiff's briefs in reply to Defendant's motion for summary judgment, Plaintiff has failed to show that there is any material factual issue in dispute. Plaintiff's allegations are conclusory, and must be dismissed.

■ In order to prevail in a Section 1983 action, the plaintiff must prove that some conduct by a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or other federal laws. *Jones v. Duncan,* 840 F.2d 359, 360–61 (6th Cir.1988). Plaintiff contends that rejection of the Aryan material violated his rights under the Free Exercise Clause of the First Amendment and his statutory RFRA rights.

■ When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to a legitimate penological interest. *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261,

96 L.Ed.2d 64 (1987). In determining reasonableness, relevant factors include (a) whether there is a "valid, rational connection" between the regulation and a legitimate and neutral governmental interest put forward to justify it, which connection cannot be so remote as to render the regulation arbitrary or irrational; (b) whether there are alternative means of exercising the asserted constitutional right that remain open to inmates, which alternatives, if they exist, will require a measure of judicial deference to the corrections officials' expertise; (c) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, on inmates' liberty, and on the allocation of limited prison resources, which impact, if substantial, will require particular deference to corrections officials; and (d) whether the regulation represents an "exaggerated response" to prison concerns, the existence of a ready alternative that fully accommodates the prisoner's rights at *de minimis* costs to valid penological interests being evidence of unreasonableness. *Turner,* 482 U.S. at 89–91, 107 S.Ct. at 2262.

■ The MDOC mail policy application in this case is reasonable and facially valid under *Turner.* The mail regulation is logically related to legitimate security concerns of prison officials, who are worried that such material promotes violence and racial supremacy. The mail policy does not deprive prisoners of all means of expression of religion, but simply bars material that promotes racial supremacy and violence. There is no easy alternative to barring such potential violence causing materials, since allowing such material into the prison population would cause more than a *de minimis* cost in terms of increasing security measures. The mail regulation is not an "exaggerated response" to security concerns with racially offensive material.

In *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) the Supreme Court emphasized the First Amendment's protection of incoming prison mail, and yet recognized that prison administrators are afforded considerable deference in regulating "relations between prisoners and the outside world." *Id.* at 408, 109 S.Ct. at

1879. In addition, the Supreme Court stated that it would not substitute its judgment on difficult and sensitive matters of institutional administration for determinations of those charged with the formidable task of running prisons. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353, 107 S.Ct. 2400, 2407, 96 L.Ed.2d 282 (1987). The MDOC's restrictions against materials that advocate violence or are so racially inflammatory as to be reasonably likely to cause violence within the prison were reasonably related to legitimate penological interests and were, therefore, valid. *Murphy v. Missouri Dept. of Corr.*, 814 F.2d 1252, 1257 (8th Cir.1987).

 Under RFRA, the government is prohibited from substantially burdening a person's exercise of religion unless doing so furthers a compelling government interest and it is the least restrictive means of furthering that interest. *Abdur–Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 492 (6th Cir.1995). Under the RFRA, the inmate must make a threshold showing that government action imposes a "substantial burden" on his exercise of religion. *Stefanow v. McFadden*, 103 F.3d 1466 (9th Cir. 1996). The interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine. *Id.*

 Plaintiff has failed to establish that his right to exercise his faith was substantially burdened by the rejection of his mail. Plaintiff's affidavit demonstrates, in fact, that some of the material that was rejected was available to him in the prison library. Further, even if the rejection of the mail substantially burdened his ability to exercise his faith, the interest in maintaining prison security constitutes a compelling interest which would justify the burden on Plaintiff's rights.

 Plaintiff's claim that Defendants deprived him of his mail without due process is without merit. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. The due process clause does not guarantee that the procedure will produce a correct decision. *Martinez v. California*, 444 U.S.

277, 284 n. 9, 100 S.Ct. 553, 558 n. 9, 62 L.Ed.2d 481 (1980). A state's deprivation "of a constitutionally protected interest in 'life, liberty or property', is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) (emphasis in original). (Stevens, J., concurring) (citing *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981)). So long as Plaintiff received that process which was due under the Constitution, no federal right is implicated by a wrong result or improper motivation. Due process rights are not created by state procedural rules. *Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983). Thus, although a state may have violated its own state procedural rules, no constitutional guarantee has been violated unless the state also failed to comply with the procedural requirements mandated by the Constitution. *Walker v. Mintzes*, 771 F.2d 920 (6th Cir.1985). Since the constitutional minima merely require that Plaintiff receive notice and an opportunity for a hearing, the failure of Defendants to follow their own procedural guidelines does not implicate the Fourteenth Amendment. Plaintiff was provided adequate notice and an opportunity to be heard and cannot establish that he was denied the due process guaranteed by the Constitution.

 When a claim for qualified immunity is raised within the context of a motion for summary judgment, "we must first decide whether the plaintiff stated a Section 1983 claim against the individual defendants before addressing the qualified immunity question." *McLaurin v. Morton*, 48 F.3d 944, 947 (6th Cir.1995). Government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A right is clearly established for purposes of qualified immunity if, at the time the right was allegedly violated,

its contours were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In determining whether a right was clearly established at the time the defendants acted, "the law must be clear in regard to the official's particular actions in the particular situation." *Black v. Parke,* 4 F.3d 442, 445 (6th Cir.1993). The question of whether qualified immunity attaches is a purely legal issue for the trial court. *Elder v. Holloway,* 510 U.S. 510, 516, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994); *Dominque v. Telb,* 831 F.2d 673, 676 (6th Cir.1987). In this case, the fact that Plaintiff put Defendants on notice that he had RFRA rights prior to the rejection hearing, does not establish his RFRA rights.

■ Assuming only for the sake of argument that Plaintiff did state and support a RFRA claim, Defendants would nevertheless be entitled to qualified immunity in this case. At the time of the alleged misconduct, there was a lack of a clearly established constitutional or statutory right of which a reasonable person would have known. This Court must focus upon whether Defendants, back in December of 1994, would have reasonably known of a right "clearly established" by the decisions of the Sixth Circuit or the Supreme Court. *Ohio Civil Serv. Employees Ass'n v. Seiter,* 858 F.2d 1171, 1177 (6th Cir.1988). Although RFRA installed the least restrictive means test by 1994, the available case law had not clarified the application of that standard. *Hicks v. Garner,* 69 F.3d 22, 26 (5th Cir.1995). Moreover, the RFRA standards were not clearly established because the RFRA test is ambiguous, with both Congress and the courts sending mixed messages. *Haff v. Cooke,* 923 F.Supp. 1104, 1115–16 (E.D.Wis.1996).

On the date of the decision to reject the mail, it was clearly established that inmates retain their First Amendment right to receive mail, but that such right would be subject to legitimate penological interests. *Thornburgh v. Abbott,* 490 U.S. 401, 407–09, 109 S.Ct. 1874, 1878–79, 104 L.Ed.2d 459 (1989). Plaintiff's RFRA rights were not obviously clear to Defendants at the time that the mail was rejected. Plaintiff admits to the complexity of the RFRA statute in his request for court appointed counsel. Further, Defendants acted consistently with Plaintiff's established First Amendment rights at the time of the mail rejection, because the mail policy was reasonably related to legitimate penological interests. *Turner,* 482 U.S. at 87, 107 S.Ct. at 2261. Since Defendants did not violate a clearly established statutory or constitutional right, they are entitled to qualified immunity.

### Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted. Plaintiff's objections to the Report and Recommendation are overruled, and the Report and Recommendation is adopted. This case, which at least borders on the frivolous, is dismissed in its entirety.

Plaintiff is hereby warned of the possible application of Section 804 of the Prison Litigation Reform Act, Pub.L. No. 104–134, 110 Stat. 1321, codified at 28 U.S.C. § 1915(g). This statute may bar future litigation that Plaintiff may wish to bring.

Further, the Court is persuaded that an appeal of the present case would not be taken in good faith, thus barring *in forma pauperis* status on appeal. 28 U.S.C. § 1915(a)(3).