**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-30380

MICHAEL S. CHRICEOL, Reverend,

Plaintiff-Appellant,

VERSUS

MICHAEL PHILLIPS, ETAL,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana

March 24, 1999

Before DAVIS, STEWART, and PARKER, Circuit Judges.

PER CURIAM:

Plaintiff Michael S. Chriceol ("Chriceol"), Louisiana Prisoner # 313675, filed a civil rights action, *pro se*, pursuant to 42 U.S.C. § 1983 alleging the prison officials at Winn Correctional Center burdened his right to free exercise of religion by repeatedly denying him mail from various religious organizations. Further, Chriceol alleges the prison officials denied him access to the courts by denying his requests for a withdrawal from his prison account to pay court costs. Both parties moved for summary

judgment. The United States District Court for the Western District of Louisiana, adopting the Report and Recommendation of the Magistrate Judge, entered summary judgment in favor of the prison officials. Chriceol now appeals.

## I. FACTS AND PROCEEDINGS

Chriceol was an inmate at the Winn Correctional Center[1] ("WCC") in Winnfield, Louisiana from August 1, 1994, to November 7, 1997. Chriceol claims he is an ordained minister. As a minister, he received religious and political material from various religious leaders, publishers, and organizations relating to his beliefs. In particular, Chriceol was sent materials from Aryan Nations/Church of Jesus Christ Christian ("CJCC").

In August 1996, Chriceol contends WCC hired a new mail room supervisor who withheld mail sent from the Aryan Nations and CJCC. From August 1996 to January 1997, the mail room withheld at least sixteen different items of mail to Chriceol.

The WCC mail room supervisor, Ann Maxey ("Maxey"), withheld Chriceol's mail under Section 16-1.5 of the Corrections Corporation of America ("CCA") Corporate Facility Policy. Section 16-1.5 states, in relevant part: "Books, magazines, newspapers and other

---

[1] The Winn Correctional Center is alleged to be a privately owned Correctional Facility in the State of Louisiana. The parties in this matter have not alleged that distinctions between state and privately owned correctional facilities impact the issues before the court. We, therefore, do not address the legal implications of those distinctions on the conditions of confinement.

2

printed matter may be approved for inmates/residents unless deemed to constitute an immediate and tangible threat to the security or order of the facility or to inmate/resident rehabilitation by meeting one or more of the following criteria...." One of the criterion is whether "[t]he material advocates racial, religious, or national hatred in such a way so as to create a serious danger of violence in the facility." Section 16-1.5 H.2 (d).

WCC gives notice to an inmate when the delivery of mail addressed to the inmate is withheld. Furthermore, the inmate is allowed an opportunity to file a grievance to protest WCC's decision to withhold the mail. Chriceol appealed WCC's decisions to withhold mail on each occasion he received a notice. On each occasion, Chriceol's appeal was denied. Chriceol also made allegations that individual(s) in the WCC mail room opened his legal mail.

In January 1997, Chriceol filled out a request to withdraw money from his prison account to file this action against the WCC prison officials. Later that month, Chriceol was told that his withdrawal request had been denied. Chriceol contends he relied on his parents to pay the necessary filing fees and on February 28, 1997, Chriceol filed this civil rights action, *pro se,* under 42 U.S.C. § 1983 against the officials at WCC.

The complaint alleged that the prison officials: (1) burdened Chriceol's right to free exercise of religion; (2) violated

3

Chriceol's right to free speech; (3) denied Chriceol access to the courts by denying his requests for withdrawals from his prison account; (4) unconstitutionally interfered with Chriceol's legal mail; and (5) retaliated against Chriceol for filing grievances. The WCC officials filed a motion for summary judgment. The district court, adopting the Report and Recommendation of the Magistrate Judge, granted summary judgment in favor of the prison officials.

## II. DISCUSSION

Proceeding on appeal *pro se*, Chriceol argues the district court erred when it granted summary judgment in favor of the WCC officials. Chriceol's argument, construed liberally,[2] is that the district court erred in concluding the WCC officials did not violate (1) his right to freedom of religion or (2) his right to access to the courts. This court reviews the district court's grant of summary judgment *de novo*. *See Brewer v. B. Wilkinson*, 3 F.3d 816, 819 (5th Cir. 1993). We are not bound by the reasons articulated by the district court for granting summary judgment and may affirm the judgment on other grounds. *See id.* at 820. Summary judgment is proper only if the record discloses that there is no genuine issue as to any material fact and the moving party is

---

[2] We construe liberally the claims of pro se appellants. *See United States v. Gobert*, 139 F.3d 436, 437(5th Cir. 1998) (citing *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993)).

4

entitled to judgment as a matter of law.     *See* Fed. R. Civ. P. 56(c).

A.   Right to Exercise Religion

Chriceol argues that prison officials at WCC violated his rights under the Free Exercise Clause of the First Amendment. Specifically, Chriceol contends the WCC mail policy of withholding mail from organizations such as Aryan Nations and CJCC infringes on his rights to practice his religion.   The prison officials, in turn, argue Chriceol's withheld mail advocated racial violence and hatred.   Thus, the prison officials contend the mail policy is legitimately related to ensuring the safety of prisoners and employees.

This court has been faced with other civil rights claims relating to infringements on prisoners' rights to free exercise of religion. *See, e.g, Eason v. Thaler*, 73 F.3d 1322 (5th Cir. 1996) (inclusion of pork in meals not violation of prisoner's right to practice his religion where prison officials did not know affiliation with muslim faith); *Hicks v. Garner*, 69 F.3d 22 (5th Cir. 1995) (prison grooming regulations rationally related to penological goals and did not violate prisoner's right to exercise his religion); *Matthews v. Morales*, 23 F.3d 118 (5th Cir. 1994) (statute prohibiting inmate from changing his name had logical connection to legitimate government interest and did not violate inmate's right to free exercise of religion).   This Court, however,

has not faced the issue of whether a prison mail policy that withholds potential violence producing materials violates an inmate's right to exercise his religion.

Other circuits have considered the extent to which prisons can withhold materials sent their inmates. The Ninth Circuit has held that a total ban on literature advocating racial purity "cannot be constitutionally banned as rationally related to rehabilitation." *McCabe v. Arave*, 827 F.2d 634, 638 (9th Cir. 1987). The *McCabe* court, however, did recognize that literature advocating violence or illegal activity could be banned. *See id. See also Murphy v. Missouri*, 814 F.2d 1252, 1256-57 (8th Cir. 1987) (holding a total ban on Aryan Nation materials too restrictive, but stating a policy restricting materials that advocate violence or that are racially inflammatory would be valid); *Winburn v. Bologna*, 979 F. Supp. 531, 534 (W.D. Mich. 1997) (prison mail policy withholding material that promotes violence and racial supremacy reasonable and valid); *Thomas v. United States Secretary of Defense,* 730 F. Supp. 362 (D. Kan. 1990) (regulation rejecting mail that communicates information designed to encourage prisoners to disrupt institution by strikes, riots, racial or religious hatred does not violate First Amendment). This Court agrees with the reasoning of the other Circuits and holds that a prison mail policy restricting access to potential violence producing materials is valid.

In *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), the

6

Supreme Court established the test for evaluating the constitutionality of regulations that infringe on prisoners' First Amendment Rights. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone*, 482 U.S. at 349. To determine whether a challenged regulation is valid, we are directed to four factors relevant for determining whether a challenged regulation is valid: (1) whether the regulation has a logical connection to the legitimate government interests invoked to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmates; (3) the impact that accommodation of the asserted constitutional rights will have on other inmates, guards, and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at de minimus cost to valid penological interests. *See O'Lone* 482 U.S. at 350-52 (citing *Turner v. Safley*, 482 U.S. 78, 89-90 (1987)).

Applying the *Turner* factors, as elaborated in *O'Lone*, WCC's policy of withholding mail that advocates racial, religious, or national hatred that creates a serious danger of violence is valid. First, there is a logical connection between WCC's policy and the legitimate government interest to justify it. The purpose of the rule is to eliminate potential threats to the security or order of the facility. Clearly, this is a legitimate interest. *See, e.g.,*

7

*Pell v. Procunier*, 417 U.S. 817, 823 (1974) ("[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves.")

The second factor, alternative means of exercising the right, also weighs in favor of the prison officials. Chriceol stated in his affidavit that the material from the Aryan Nations and CJCC were only a part of the "publications/materials/letters" he received. Moreover, Chriceol acknowledged in his complaint that he was in possession of many different religious, political, and nationalist publications. There is no evidence the prison officials have withheld other religious material that would preclude him from exercising his right to free exercise of religion.

Third, we must consider the impact the accommodation of Chriceol's asserted rights will have on other inmates, guards, and prison resources. The prison officials contend the publications, a majority of which were from white supremacist groups, encouraged hatred and violence. The magistrate judge found the materials were "incendiary to the point of being almost certain to cause interracial violence and nearly all of them openly advocate violence or other illegal activities." The prison officials could legitimately conclude that accommodating Chriceol's requests for materials that advocate violence and hatred could cause violence. The third factor weighs in favor of the prison officials.

8

Finally, this Court must consider the possibility of alternatives. "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimus* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Turner*, 482 U.S. at 91. Chriceol has not directed this Court to any alternatives. Further, there are no easy alternatives to barring potential violence producing materials. For example, allowing Chriceol to review these materials, in the presence of security, would cause more than a *de minimus* cost in terms of the necessary security measures. The fourth factor also weighs in favor of the prison officials.

Applying *Turner*, the WCC mail policy did not violate Chriceol's rights under the Free Exercise Clause of the First Amendment.

B. Denial of Access to the Courts

Prisoners clearly have a constitutionally protected right of access to the courts. *See Lewis v. Casey,* 518 U.S. 343, 350 (1996) (citing *Bounds v. Smith*, 430 U.S. 817 (1977)). Interference with a prisoner's right to access to the courts, such as a delay, may result in a constitutional deprivation. *See Jackson v. Procunier*, 789 F.2d 307, 311 (5th Cir. 1986) (citing *Ryland v. Shapiro,* 708 F.2d 967, 972 (5th Cir. 1983). Arguably, withholding access to a prison account to pay for legal fees could, at a minimum, cause a

9

delay in access to the courts.  Withholding money from a prison account could also effectively deny access to obtaining an attorney, filing a complaint, or mailing other legal documentation.

While denial of access to a prison account may give rise to relief under § 1983, the facts of this case do not exemplify a constitutional deprivation.  In *Lewis v. Casey*, 518 U.S. 343, 351-54 (1996), the Supreme Court held that an inmate alleging denial of access to the courts must demonstrate an actual injury stemming from defendants' unconstitutional conduct.  *See also Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998) ("without proving an actual injury, a prisoner cannot prevail on an access-to-the-courts claim.").  Thus, to secure relief, Chriceol must demonstrate actual injury.

Chriceol has not demonstrated that withholding access to his prison account caused actual injury in this case.  Furthermore, a review of the record does not show any evidence of actual injury.  Chriceol's fee was paid and the complaint was successfully filed.

### III.  CONCLUSION

In sum, we AFFIRM the district court's decision to grant summary judgment.

AFFIRMED