IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-60350
Summary Calendar

_____

JANICE GRAY,

Plaintiff-Appellant

v.

ENTERGY OPERATION, INC.; DON HINTZ;
MIKE BAKARICH; JOSEPH HAGAN; MARY SEE,

Defendants-Appellees

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 5:99-CV-62-BN

_____

November 29, 2000

Before KING, Chief Judge, and SMITH and PARKER, Circuit Judges.

PER CURIAM:[*]

    Plaintiff-Appellant Janice Gray appeals from the district

court's grant of summary judgment in favor of Defendants-

Appellees, Entergy Operation, Inc.; Don Hintz, Chief Executive

Officer of Entergy Operation, Inc.; Mike Bakarich; Joseph Hagan;

and Mary See.  For the following reasons, we AFFIRM.

---

    [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Since 1977, Janice Gray, an African American female, has been employed at the Grand Gulf Nuclear Power Station in Port Gibson, Mississippi (the "Grand Gulf facility").  On March 12, 1999, Gray filed suit against her employer Entergy Operations, Inc. (EOI) and several management officials under 42 U.S.C. § 1981, claiming discrimination on the basis of race.  Her suit included the following three causes of action: failure to promote, payment of disparate wages, and establishment of discriminatory working conditions.

On January 7, 2000, defendants filed a motion for summary judgment.  In response, Gray requested a voluntary dismissal of several claims, pursuant to Rule 41 of the Federal Rules of Civil Procedure.  She also filed a Motion to Strike Affidavit of James M. Cooley, the Manager of Employee Relations at the Grand Gulf facility.  The district court, on March 2, 2000, denied Gray's motion to strike, granted her Rule 41 motion, and awarded defendants summary judgment on the remaining claims.  After the district court granted Gray's Rule 41 motion, four claims remained: discriminatory promotion claim for the 1996 Site Administrative Programs Coordinator position; discriminatory promotion claim for the 1999 Procurement Specialist III position; disparate wages claim; and discriminatory working conditions claim.

2

On March 16, 2000, Gray filed a Motion to Amend and to Make Additional Findings of Fact and Motion to Amend Opinion and Judgment ("Rule 52 and 59(e) Motion"). The district court denied this motion on April 16, 2000. Gray then filed a timely notice of appeal from this decision.[1]

## II.  STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. See Burch v. City of Nacogdoches, 174 F.3d 615, 618 (5th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." Allen

---

[1] Gray asserts in her brief on appeal that Cooley's affidavit was inaccurate. She does not argue that the affidavit should have been stricken on this basis; rather, it appears that she is attempting to demonstrate the existence of genuine issues of material fact. Thus, we address her arguments regarding Cooley's affidavit in the context of her discrimination claims. See infra Section III.

v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)

(internal quotations and citation omitted).  Doubts are to be

resolved in favor of the nonmoving party, and any reasonable

inferences are to be drawn in favor of that party.  See Burch,

174 F.3d at 619.


## III.  DISCRIMINATION CLAIMS

A plaintiff can prove a claim of intentional discrimination

by either direct or circumstantial evidence.  Absent direct

evidence of discriminatory intent, as is typically the case,

proof via circumstantial evidence is accomplished using the

framework set forth in the seminal case of McDonnell Douglas

Corp. v. Green, 411 U.S. 792 (1973).[2]  First, the plaintiff must

establish a prima facie case of discrimination.  See Reeves v.

Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000).

Second, the employer must respond with a legitimate,

nondiscriminatory reason for its decision.  See McDonnell

Douglas, 411 U.S. at 802.  This is only a burden of production,

not persuasion, involving no credibility assessments.  See Texas

---

[2] Gray is asserting causes of action under 42 U.S.C. § 1981.
Because "[c]laims of intentional discrimination brought under
Title VII and Section 1981 require the same proof to establish
liability," we will examine Gray's § 1981 claims under the well-
established Title VII rubric of analysis.  See Byers v. Dallas
Morning News, Inc., 209 F.3d 419, 422 n.1 (5th Cir. 2000); see
also Lawrence v. University of Tex. Med. Branch at Galveston, 163
F.3d 309, 311 (5th Cir. 1999) ("Employment discrimination claims
brought under [§ 1981] . . . are analyzed under the evidentiary
framework . . . [of] Title VII.").

4

Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-56 (1981). Third, if the employer carries its burden, the inference of discrimination (created by the plaintiff's prima facie case) evaporates, and the plaintiff must prove intentional discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

In making this showing, the plaintiff can rely on evidence that the employer's reasons were a pretext for unlawful discrimination. See McDonnell Douglas, 411 U.S. at 804. "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 120 S. Ct. at 2109. With this framework in mind, we proceed to analyze Gray's three discrimination claims.

## A. Failure-to-Promote Claim

The district court granted defendants summary judgment on the claim regarding the Site Administrative Programs Coordinator position.[3] The court found that Gray established a prima facie case of discrimination and that defendants put forth

---

[3] The district court also ruled that Gray's remaining failure-to-promote claim (for the Procurement Specialist III position) violated Rule 8 of the Federal Rules of Civil Procedure because it was not contained in her original complaint. Gray is not contesting this issue on appeal.

nondiscriminatory reasons for their decision.  The district court then concluded that Gray did not survive summary judgment because she failed to demonstrate that defendants' proffered reasons were pretextual.

To establish a prima facie case of discrimination for a promotion claim, the plaintiff must demonstrate that (1) the plaintiff is a member of a protected group; (2) the plaintiff was qualified for the position; (3) the plaintiff was subjected to an adverse employment action; and (4) the plaintiff was replaced by someone outside the protected class.  See Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999).  We agree with the district court that Gray established a prima facie case of discrimination: she is African American, a member of a racial minority; she was qualified for the position of Site Administrative Programs Coordinator (she had at least a high school diploma and at least ten years of nuclear or administrative experience); she was not hired for the position; and Karen Rucker, a Caucasian female, was subsequently hired for the position.  Defendants, in turn, have satisfied their burden of production and put forth two nondiscriminatory reasons for their employment decision: (1) Rucker was more qualified[4]; and

---

[4] Defendants point to Rucker's fluency in several languages, as well as her oral and written presentations to high-level British government officials.  As they were looking for an applicant with strong communication skills who could interact extensively with the public and who could influence management at all levels, defendants state that the three-person interview

6

(2) Rucker would be more compatible with her supervisor in that position, Site Vice-President Joseph Hagan.[5]

To demonstrate that defendants' reasons are pretextual, Gray makes several arguments. She first asserts that Rucker did not meet the minimum qualifications for the position because there was no proof of her high school diploma, or equivalent, in the personnel files. This is clearly rebutted by evidence in the record that Rucker's education certificates from England were in her personnel file, and a defense expert testified that her English certifications were the equivalent of a U.S. high school diploma.

Gray also points out that Rucker became eligible to apply only when the qualifications for the position were weakened (from ten years of nuclear experience to ten years of nuclear or administrative experience). The district court found that Gray admitted the qualifications were changed to match Rucker's qualifications in particular, not simply because Rucker was white. Furthermore, defendants bypassed other qualified white candidates who were eligible when the position was first posted. Thus, the re-posting of the position does not "prove by a

_____

panel (which included the African-American human resources manager, Cooley) unanimously decided Rucker was the most qualified.

[5] Defendants state that Rucker had previously worked for Hagan as his secretary, and thus, Hagan was familiar with her abilities.

preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Reeves, 120 S. Ct. at 2106 (internal quotations and citation omitted) (quoting Burdine, 450 U.S. at 253).

In addition, Gray puts forth statements from the deposition of Jeff Braswell, an EOI retiree, that qualifications were tailored to conform to the wishes of Mike Bakarich, a former manager at the Grand Gulf facility.  Although defendants imply that statements not in connection with this promotion claim are irrelevant, the Supreme Court clearly stated in Reeves that pretext evidence should not be circumscribed as such.  See id. at 2111.  Thus, general remarks should not be discounted because they were not made in direct reference to the employment decision; any evidence that could shed light on an employer's true motive must be taken into account.  See id.  However, in this case, the link between Braswell's statements and defendants' employment decision regarding the promotion are far too tenuous to establish pretext.[6]

_____

[6] Braswell's testimony was in reference to another position; both Braswell and Bakarich were no longer employed at EOI during the interview process for this position; this position was to be under Hagan, not Bakarich; a three-person panel, which included an African-American manager, interviewed all candidates for this position; and Gray cites to no evidence in the record supporting her implication that Bakarich's preferences for his "proteges" were based on race (in fact, Braswell admitted that one of Bakarich's proteges was a black woman).

Although Gray had more seniority with the company and education beyond high school, Rucker met the minimum qualifications and had other qualities that defendants found appealing for the position. Gray has failed to create a genuine issue that defendants' proffered reasons are pretextual[7] and thus does not survive summary judgment on this claim.

## B. Disparate Wages Claim

In this claim, Gray alleges that defendants paid her disproportionately less wages than similarly situated white employees. "To establish a prima facie case of discrimination respecting compensation a plaintiff must prove (1) that she is a member of a protected class, and (2) that she is paid less than a nonmember for work requiring substantially the same responsibility." Uviedo v. Steves Sash & Door Co., 738 F.2d 1425, 1431 (5th Cir. 1984), cert. denied, 474 U.S. 1054 (1986).

While Gray satisfies the first prong because she is African American, she fails to make a showing on the second prong of the test. She has not presented any evidence that she was paid less than white co-workers with similar responsibilities. Rather than providing specific information, Gray attempts to make her prima

---

[7] Gray also makes other conclusory allegations that defendants failed to advertise positions and did not select the most qualified employees for the positions (choosing instead "select" employees). As these arguments are inadequately briefed, we do not consider them on appeal. See Trevino v. Johnson, 168 F.3d 173, 181 n.3 (5th Cir. 1999).

9

facie case via several general arguments.  She points again to Jeff Braswell's deposition in which Braswell stated that secretaries are paid higher than clerks for performing the same duties.  Braswell's statements are not sufficient to establish Gray's prima facie case because Braswell does not testify as to Gray's wages or the wages of employees with Gray's responsibilities.

Gray also asserts that Ron Husbands, manager at Entergy Services, Inc. (ESI), testified in his deposition that merit pay raises are arbitrarily and subjectively determined.  This does not aid Gray in establishing her prima facie case either because Husbands was testifying in another case, <u>Washington v. Entergy Operations, Inc.</u>; he is a manager at ESI, not EOI; he was testifying as to how raises were allocated to ESI employees; and he did not provide any information as to Gray's wages or the wages of employees similarly situated to Gray.[8]  As such, Gray has not created a genuine issue by pitting Husbands's affidavit against Cooley's affidavit, in which Cooley stated that EOI performance appraisals are primarily objective.[9]

---

[8] We also note that Gray mischaracterizes Husbands's testimony as stating that wages at ESI were subjectively or arbitrarily determined.  Husbands actually stated that while specific numerical percentages were not used, factors such as performance and potential guided their personnel determinations.

[9] Gray's reliance on the deposition of John J. Farren, the Grand Gulf facility's Human Resources Representative, is also of no avail.  His testimony, examined in full context, does not support Gray's contention that salary determinations are

Because Gray has not demonstrated with particularity the identity of the similarly situated non-minority employees who were paid higher wages, we agree with the district court that Gray failed to establish a prima facie case on her disparate wages claim.  Thus, summary judgment on this claim was appropriate.

### C. Working Conditions Claim

Gray asserts that she "experienced [a] discriminatory work environment."  She puts forth statistics that African Americans are concentrated in the unskilled and minimally skilled jobs at EOI, whereas whites are in the professional jobs.  Gray's specific allegations regarding this claim are not entirely clear.  If Gray is attempting to demonstrate disparate impact with these statistics, she does not state a claim cognizable under § 1981.  While "[d]isparate impact claims . . . do not require proof of intent to discriminate," Munoz v. Orr, 200 F.3d 291, 299 (5th Cir. 2000), § 1981 claims necessarily entail proof of intentional discrimination.  See General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982) ("[Section] 1981 . . . can be violated only by purposeful discrimination.").

Because Gray explicitly framed her claims under § 1981, her working conditions claim can then be based only on disparate

---

arbitrary.

treatment, which "refers to deliberate discrimination in the terms or conditions of employment." Munoz, 200 F.3d at 299. In support of this claim, Gray asserts that statistics show there are "black jobs" and "white jobs," and she appears to argue that these segregated job classifications are furthered by the use of subjective and arbitrary criteria in employment decisions.[10] While statistical evidence is common in so-called "pattern or practice cases" (class actions alleging disparate treatment), an individual plaintiff can also utilize such evidence to demonstrate intentional discrimination.

> The plaintiff may establish a prima facie case of disparate treatment using statistics alone if the statistics show a gross disparity in the treatment of workers based on discriminatory factors. However, if the plaintiffs' [sic] statistical evidence is insufficient alone to establish a prima facie case of disparate treatment, the plaintiff may combine the statistical evidence with historical, individual, or circumstantial evidence.

Trevino v. Holly Sugar Corp., 811 F.2d 896, 902 (5th Cir. 1987) (internal quotations and citations omitted); see also Krodel v. Young, 748 F.2d 701, 710 (D.C. Cir. 1984) (stating that, for individual disparate treatment plaintiffs, the Supreme Court "has pointed out that [statistical] evidence is admissible and may be helpful, though ordinarily not dispositive").

---

[10] Gray does not expressly characterize her working conditions claim as such. However, this circuit has held consistently that claims of pro se appellants are liberally construed. See, e.g., United States v. Glinsey, 209 F.3d 386, 392 n.4 (5th Cir. 2000); Chriceol v. Phillips, 169 F.3d 313, 315 n.2 (5th Cir. 1999).

12

In this case, Gray's statistics that African Americans are concentrated in the minimally skilled jobs are derived from the deposition of William Boykin, a plaintiff pursuing his own action against EOI. Defendants argue that these statistics are not admissible in this case because Boykin is not qualified to give such testimony and because the numbers are unsubstantiated. We do not decide this issue because we agree with the district court's assessment that the evidence "does not prove [Gray], individually, has suffered discrimination." That the majority of employees in the professional positions are white does not ineluctably lead to an inference of intentional discrimination, establishing a prima facie case. Gray has not presented any evidence linking that disparity with racial animus (which adversely affected her employment) and thus fails to demonstrate a prima facie case of disparate treatment.

Gray also asserts that the 1996 EEO-1 reports submitted by EOI to the Equal Employment Opportunity Commission demonstrate discriminatory intent. We do not agree. These reports illustrate the racial composition in the various positions at EOI, and again, Gray has not demonstrated that the numbers were the result of invidious bias, as required by a disparate treatment claim.

Thus, Gray has failed to create a genuine issue of intentional discrimination in her working conditions claim, and summary judgment was appropriate in this regard.

13

**IV. CONCLUSION**

For the above stated reasons, we AFFIRM the judgment of the district court.