United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 25, 2005**

Charles R. Fulbruge III
Clerk

REVISED JANUARY 26, 2005

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-21182

_____

JOE ALFRED IZEN, JR.; KAREN SUTER IZEN,

Plaintiffs - Appellants,

VERSUS

TERRANCE CATALINA, Special Agent, Individually;
JAMES CLIMER, Special Agent, Individually;
UNITED STATES OF AMERICA,

Defendants - Appellees.

Appeal from the United States District Court
for the Southern District of Texas, Houston

**OPINION ON REHEARING**
(Opinion August 23, 2004, 5ᵗʰ Cir., 2004, ____ F.3d ___)

Before JONES, MAGILL,[*] and SMITH, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Joe Alfred Izen, Jr., a Texas attorney, appeals the district court's order granting summary judgment in favor of IRS agents Terrance Catalina and James Climer. Izen's Bivens action alleges that Catalina and Climer engaged in malicious prosecution and retaliation in violation of the Fourth

---

[*] Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

and First Amendments, respectively, when they investigated and prosecuted him for money laundering. The district court, acting on remand from this court in Izen v. Catalina, 256 F.3d 324 (5th Cir. 2001) ("Izen I"), granted summary judgment in favor of the agents on Izen's Fourth Amendment malicious prosecution claim on the ground that Izen did not meet the common law elements of that tort. It granted the agents' motion for summary judgment on Izen's First Amendment retaliation claim for the same reason, and held in addition that Izen had not raised a genuine issue of material fact as to the agents' retaliatory motive. The court also granted the United States' motion for summary judgment on Izen's Federal Tort Claims Act claims of malicious prosecution, false arrest, intentional infliction of emotional distress, and negligence. Izen appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the district court's grant of summary judgment as to all claims.

**I.**

Izen is a tax attorney. He has long represented tax protestors and other defendants in criminal tax cases. In August 1989, IRS agent Catalina received a referral from the Waco, Texas, IRS collection office alleging that Izen had not filed income tax returns for tax years 1986, 1987, and 1988. The referral contained allegations from a third party informant that Izen was involved in money laundering, including allegations that Izen was involved in

2

the failure of a private bank and had accounts in foreign countries. Catalina soon deemed the informant unreliable. Izen alleges the informant was Michael J.B. Easton, who had an indictment pending against him at the time and, according to Izen, aided Izen's ex-wife in surreptitiously withdrawing a large sum of money from an account of Izen's.

In October 1989, Catalina accepted the referral for investigation of the charge of failure to file tax returns. He determined there was insufficient basis to investigate Izen for money laundering, but recommended opening a criminal income tax investigation for the years 1986 through 1988 based on the missing returns. Catalina also recommended including 1985 in the investigation, though a return had been filed. Catalina's tax investigation was soon derailed by the fact that Izen ultimately filed his 1986 return in September 1989, and filed his 1987 and 1988 returns in April 1990, even receiving refunds approved by Catalina.

Although Catalina dropped the income tax investigation, he then embarked on a money laundering investigation. Izen alleges that the impetus for the investigation was a desire to retaliate against him for his history of association with tax protestors, his representation of criminal tax defendants, and his representation of taxpayers utilizing foreign trusts to reduce their federal income tax. See, e.g., United States v. Dahlstrom, 713 F.2d 1423 (9th Cir. 1983) (reversing the convictions of foreign tax shelter promoters, one of whom was represented by Izen). Izen's contention

3

finds support in IRS investigative reports that prominently mention both Izen's association with tax protestors as well as his successful representation of tax clients. Catalina in turn alleges that the investigation was prompted by his review of various reports concerning a client of Izen's, Nassau Life Insurance Company Limited ("NLIC"), and persons and banks related to or doing business with that entity.

Upon reviewing the reports concerning Izen's client, Catalina, with the permission of his superiors, commenced an undercover investigation of Izen himself which lasted from 1990 to 1992. Climer was the undercover agent assigned to the investigation. Climer posed as a client seeking to create a foreign trust in which to deposit proceeds from the sale of purportedly stolen oil. Numerous conversations between Izen and Climer were apparently taped, though the agents have not placed any of the recordings in the record.[1] Catalina testified before a grand jury in May 1995, and it returned a four-count indictment of Izen for conspiracy to commit money laundering and aiding or abetting or attempting money laundering. Izen alleges that the indictment was secured in part due to alleged misrepresentations made by Catalina to the grand jury.[2] In May 1996, for undisclosed reasons, the

---

[1] Izen placed in the record those portions of the recordings which he argues are exculpatory.

[2] Only a small fraction of Catalina's grand jury testimony is in the record. Because of Izen's allegations, the district court did not rely on the indictment.

4

United States moved to withdraw the presentment of the indictment and all criminal charges against Izen were dismissed.

Izen brought suit in 1997, alleging various constitutional and non-constitutional torts. The district court dismissed all of Izen's claims. Izen appealed the dismissal of his Fourth Amendment malicious prosecution claim, his First Amendment retaliation claim, his Fifth Amendment claim, the denial of his motion for disclosure of grand jury materials, and the grant of summary judgment in favor of the agents based on their qualified immunity defense.

In Izen I we reversed the dismissal of the malicious prosecution and retaliation claims, holding that the district court had misconstrued the applicable law on both. In addition, we held that a genuine issue of material fact existed as to whether Izen was investigated and prosecuted in retaliation for representing criminal tax defendants. We affirmed the dismissal of Izen's Fifth Amendment claim as well as the denial of his motion for disclosure.

On remand, Izen filed a second amended complaint in which he added a Federal Tort Claims Act cause of action against the United States. The district court again granted summary judgment in favor of the agents and United States on all claims. Izen appeals the grant of summary judgment on his malicious prosecution claim, his retaliation claim, and his Federal Tort Claims Act cause of action.

5

## II.

This court reviews a grant of summary judgment <u>de</u> <u>novo</u>. <u>Chriceol v. Phillips</u>, 169 F.3d 313, 315 (5th Cir. 1999). We may affirm a grant of summary judgment on grounds other than those offered by the district court. <u>Id.</u> The moving party bears the burden of showing that there is an absence of evidence to support the nonmoving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). If this burden is met, then the nonmoving party must set forth specific facts showing a genuine issue for trial remains. FED. R. CIV. P. 56(e).

### A. Malicious Prosecution

We affirm the district court's order granting summary judgment on Izen's claim of malicious prosecution, though on different grounds. In this circuit, plaintiffs no longer allege a constitutional violation by satisfying the state law elements of malicious prosecution alone. <u>Castellano v. Fragozo</u>, 352 F.3d 939, 942 (5th Cir. 2003) (en banc), <u>cert. denied</u>, 125 S. Ct. 33 (2004).[3] Because Izen's complaint does not state a claim under the Fourth

---

[3] Though the claim in <u>Castellano</u> was brought under § 1983 while Izen invokes <u>Bivens</u>, we have held that the constitutional torts authorized by each are coextensive. <u>Evans v. Ball</u>, 168 F.3d 856, 863 n.10 (5th Cir. 1999) ("A <u>Bivens</u> action is analogous to an action under § 1983SSthe only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials."), <u>overruled on other grounds by Castellano</u>, 352 F.3d at 948-49 & n.36. Thus, we do not distinguish here between <u>Bivens</u> claims and § 1983 claims.

Amendment directly, the district court properly granted the agents' motion for summary judgment.[4]

## B.  Federal Tort Claims Act

Izen's second amended complaint alleges claims under the Federal Tort Claims Act based on the state torts of malicious prosecution, false arrest, intentional infliction of emotional distress, and negligence.  The district court held that each of these claims failed for lack of exhaustion under 28 U.S.C. § 2675.  Section 2675 provides that a would-be plaintiff must first present his claim to the appropriate federal agency.  While Izen did so, the district court held that the scope of the claims stated in his second amended complaint went far beyond his administrative complaint.  Because Izen has not contested this holding, we affirm.

## C.  First Amendment Retaliation

### The Retaliation Standard

Izen alleges that Catalina launched the sting operation and prosecuted him in retaliation for his history of representing criminal tax defendants.  "[T]he First Amendment prohibits not only direct limitations on speech but also adverse government action against an individual because of her exercise of First Amendment

---

[4]     Further, the record does not support a claim directly under the Fourth Amendment, rendering remand fruitless.

7

freedoms." <u>Colson v. Grohman</u>, 174 F.3d 498, 508 (5th Cir. 1999).[5] Subjecting an attorney to criminal investigation and prosecution with the substantial motivation of dissuading him from associating with and representing clients opposing the IRS would violate the First Amendment.

In the criminal prosecution context, plaintiffs must establish three elements in order to make out a retaliation claim. <u>Keenan v. Tejeda</u>, 290 F.3d 252, 258 (5th Cir. 2002). Plaintiffs must show that "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." <u>Id.</u> This court further requires plaintiffs in the prosecution context to establish each of the common law malicious prosecution elements in addition to those three derived from the First Amendment. <u>Id.</u> at 260; <u>see also</u> <u>Johnson v. La. Dep't of Agric.</u>, 18 F.3d 318, 320 (5th Cir. 1994) (same).[6] "One of these standards is an absence of

_____

[5] <u>See also</u> <u>Smith v. Plati</u>, 258 F.3d 1167, 1176 (10th Cir. 2001) ("'Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harass-ment, constitutes an infringement of that freedom.'") (quoting <u>Worrell v. Henry</u>, 219 F.3d 1197, 1212 (10th Cir. 2000)).

[6] To this end, Izen's assertion that <u>Wilson v. Thompson</u>, 593 F.3d 1375 (5th Cir. 1979) controls is incorrect. That case involved an attempt to enjoin a criminal prosecution brought with retaliatory intent. <u>See</u> <u>id.</u> at 1387. Because the criminal proceedings in <u>Wilson</u> had not yet terminated, plaintiffs could not be required to prove the elements of malicious prosecution, which

8

probable cause to prosecute." Keenan, 290 F.3d at 257; see also Mozzochi v. Borden, 959 F.2d 1174, 1180 (2d Cir. 1992) ("An individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government."). For purposes of malicious prosecution, probable cause means "the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." Kerr v. Lyford, 171 F.3d 330, 340 (5th Cir. 1999) (quoting Moore v. McDonald, 30 F.3d 616, 620 n.2 (5th Cir. 1994)).[7]

The district court applied the Johnson standard and granted summary judgment on behalf of the agents, reasoning in part that Izen had not established the common law elements of malicious prosecution. Izen v. Catalina, 251 F. Supp. 2d 1327, 1340-41 (S.D.

---

includes among its elements proof that the criminal action was terminated in plaintiffs' favor (see Keenan, 290 F.3d at 257).

[7] This standard, which we share with the Second, Third, Eighth, and Eleventh Circuits, differs from that used in the Sixth, Seventh, Tenth, and D.C. Circuits. See Moore v. Hartman, 388 F.3d 871, 879 (D.C. Cir. 2004) (discussing the circuit split and that circuit's standard, which does not include the requirement that a plaintiff prove a lack of probable cause to succeed in a retaliatory prosecution claim); compare Mozzochi v. Borden, 959 F.2d 1174, 1180 (2d Cir. 1992) (requiring a plaintiff to prove the absence of probable cause to go forward on a retaliatory prosecution claim); Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 796-97 (3d Cir. 2000) (same); Smithson v. Aldrich, 2335 F.3d 1085, 1063 (8th Cir. 2000) (same); Redd v. City of Enterprise, 140 F.3d 1378, 1383-84 (11th Cir. 1998) (same) with Greene v. Barber, 310 F.3d 889, 897-98 (6th Cir. 2002) (refusing to require proof of lack of probable cause for a retaliatory prosecution claim); Poole v. County of Otero, 271 F.3d 955, 961 (10th Cir. 2002) (same); Haynesworth v. Miller, 820 F.2d 1245, 1257 (D.C. Cir. 1987) (same).

Tex. 2002).  In particular, the court held that Izen had not raised an issue of material fact as to whether the agents lacked probable cause to prosecute.   A court determines whether probable cause existed as of the time the government instituted criminal proceedings.  Gordy v. Burns, 294 F.3d 722, 728, overruled on other grounds by Castellano v. Fragozo, 352 F.3d at 948-49.  Although Catalina's initial information about Izen came from a potentially unreliable informant, Catalina received verifiable, independent information concerning Izen's questionable activities that amounted to probable cause before seeking an indictment.

In 1989, the IRS learned the following about Izen from the informant: (1) Izen was personally involved in the failure of the Chilton Private Bank in Chilton, Texas; (2) Izen was closely tied to Robert Chappell, the founder of NLIC, a tax shelter operating out of the Bahamas; (3) Izen engineered large transfers of money from Chilton Private Bank to offshore banks before the Chilton Private Bank failed; and (4) Izen had deposited $4-5 million dollars in the Isle of Man.  R. 798.  Additionally, the IRS learned the Izen had a great deal of knowledge about offshore banking and the working of NLIC, and he had a "close personal relationship" with Robert Chappell.  R. 797.  This information, coupled with Izen's failure to file tax returns for the years 1986, 1987, and 1988, led Catalina to conclude that opening a criminal investigation into Izen's affairs was warranted.   The Chief

10

Criminal Investigation officer approved this investigation. No charges were filed at this time.

Initial inquiries, including a deposition given by Izen, indicated irregularities with Izen's financial transactions for the 1985 tax year (in which he did file a tax return). Catalina, however, concedes that he was not aware that Izen eventually filed tax returns for the missing years. The returns were filed in September of 1989, after the investigation was officially opened. In any event, after Catalina's initial review of the documents indicated suspicious activity, and in light of the procedural benefits (mainly the ability to enforce summonses) afforded by a grand jury, Catalina requested a grand jury investigation.[8] The Department of Justice approved this request. Catalina thought an undercover operation would assist in the case. Catalina's supervisor approved the operation. In early 1990, Catalina began to corroborate some of the information provided by the initial informant. Catalina learned independently that: (1) Izen had been representing NLIC since 1983; (2) the president and founder of NLIC, Robert Chappell, was a fugitive from a mail fraud conviction; (3) Chappell and his organization attracted numerous "anti-government" individuals; (4) several fugitives were apparently

---

[8] This use of a grand jury for <u>investigative</u> purposes is distinguished from a prosecutor's use of a grand jury to seek an indictment. <u>See generally</u> Sara Sun Beale et al., Grand Jury Law and Practice § 1.7 (2d ed. 1997). Catalina was not required to have probable cause to indict Izen when he requested the grand jury investigation.

11

living and working with Chappell in the Bahamas; (5) two of the fugitives, both of whom were considered armed and dangerous, fled the country on tax charges, and were believed to be in charge of NLIC's foreign operations; (6) another NLIC executive was a fugitive on state income tax evasion charges in California; (7) NLIC used Chilton Private Bank in Chilton, Texas for some transactions; and (8) there had been over one hundred cases and thirty-one convictions numbered on taxpayers involved with NLIC. R. 791. Catalina verified an employment contract between Izen and NLIC, and that two Houston residents used Izen's office address for their Cayman Island bank accounts. Furthermore, Catalina learned that Izen: (1) attempted to establish offshore banks on numerous occasions; (2) visited several tax haven countries; (3) agreed to set up a foreign trust; (4) had a bank account in the Bahamas that he did not declare in his 1985 tax return.

Additionally, the undercover operation gleaned more information about potential money laundering. For example, one suspect explained that Chilton Private Bank could be used to launder money. When, acting undercover, Climer contacted Izen and asked him to set up an offshore trust, he offered to do so. Izen also helped Climer launder the money by establishing offshore accounts and foreign trusts, and using tax haven country banks. Izen violated domestic tax law through these actions. Izen also disobeyed other American law requirements, such as failing to file a Form 8300 after receiving a $15,000 cash payment from Climer.

12

All of this evidence, taken in its entirety, demonstrates probable cause as a matter of law. By the time the government presented information to the grand jury, it had significant, independently verifiable information that Izen was in fact guilty of money laundering. Even assuming arguendo that Izen could create a triable issue of fact as to the remaining elements of the retaliatory prosecution claim, because he is unable to create a triable issue of fact as to whether probable cause existed when he was indicted, the district court thus properly granted summary judgment to Catalina on the retaliation claim.[9]

## III.

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment to the defendants as to all claims.

---

[9] We therefore need not reach the qualified immunity issue raised by Catalina.

13